NOT FOR PUBLICATION (Docket No. 9)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| C. LEE DEMPSEY, : | | |
| : | | |
| Plaintiff, : | Civil No. 08-5454 (RBK/AMD) | |
| : | | |
| v. : | **OPINION** | |
| : | | |
| PISTOL PETE'S BEEF N BEER, LLC, : | | |
| d/b/a PISTOL PETE'S SALOON & : | | |
| RESTAURANT, d/b/a PISTOL PETE'S : | | |
| SALOON STEAK HOUSEMRAW BAR : | | |
| d/b/a PISTOL PETE'S STEAKHOUSE & : | | |
| SALOON, et al., : | | |
| : | | |
| Defendants. : | | |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Plaintiff C. Lee Dempsey ("Plaintiff") for default judgment. Plaintiff's Complaint brings claims against Defendants Pistol Pete's Beef N Beer, LLC and Salvi & Peter Land, LLC ("Defendants") for violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1 et seq. ("LAD").

Because Plaintiff has not met his burden of establishing standing, the Court will deny Plaintiff's motion for default judgment and order Plaintiff to file an amended complaint alleging facts consistent with this opinion.

1

I.   **BACKGROUND**[1]

    A.   **Facts**

Defendants own and operate a restaurant called Pistol Pete's Beef N Beer in Pleasantville, New Jersey ("Pistol Pete's").[2] Plaintiff Dempsey is a New Jersey resident who uses a wheelchair for mobility. Prior to the filing of the instant action, Dempsey visited Pistol Pete's intending to utilize the facilities. Dempsey was unable to fully and safely access Pistol Pete's facilities, however, due to the alleged existence of numerous structural barriers. Plaintiff desires to visit Pistol Pete's and utilize its facilities in the future, but cannot do so fully and safely until the barriers are removed. The barriers in question can be grouped into seven basic categories according to location: (1) exterior, entrance and ground floor; (2) ground floor bar area; (3) ground floor men's restroom; (4) upstairs dining room; (5) upstairs men's restroom; and (6) parking lot. A brief description of the alleged structural barriers follows.

        1.   **Exterior, Entrance & Ground Floor**

Plaintiff alleges that the entire facility fails to provide adequate directional and informational signage. Moreover, the exterior patio tables are set at an inaccessible height. There is also no safe ramp leading from the exterior patio area to the interior of the facility. Similarly, there is no accessible pathway leading from the main entrance of Pistol Pete's to the restrooms, due in part to the obstruction caused by a large popcorn machine. Passage from the

---

[1] The facts in this section are drawn exclusively from the allegations contained in Plaintiff's Complaint.

[2] Defendant Salvi & Peter Land, LLC is alleged to be "the owner and lessor of the real property where [Pistol Pete's] is located"; whereas, Defendant Pistol Pete's Steakhouse & Saloon is "the lessee and/or operator of the real property, and the owner of the improvements where [Pistol Pete's] is located." (Pl.'s Compl. at ¶ 5.)

downstairs area to the upstairs area is likewise inaccessible due to the existence of a staircase.

### 2. Ground Floor Bar Area

The bar/serving counter is rendered inaccessible to Plaintiff as the entirety of the counter is set higher than thirty-four inches above the finished floor. The tables are similarly inaccessible due to being supported by large pedestal bases that do not afford adequate underneath clearance. Plaintiff also alleges that the video juke box is inaccessible but does not explain why.

### 3. Ground Floor Men's Restroom

As an initial matter, the outer door to the restroom does not provide signage indicating that the restroom is accessible to those with disabilities. Inside the restroom, the lavatories themselves are inaccessible to Plaintiff because there is less than twenty-nine inches of clearance between the bottom of the apron under the units and the finished floor. Moreover, the hot water and drain pipes underneath the lavatories are not insulated to prevent burns and the units lack a rear grab bar. The urinals are also inadequate because they are not stall-type or wall-hung with an elongated rim, and in any event, are more than seventeen inches above the finished floor. In addition, the locking mechanisms on the restroom doors are not operable with one hand and/or require tight grasping, pinching, or wrist twisting. Plaintiff also alleges that the hand dryer, soap dispenser, and coat hook are inaccessible but does not indicate how this is so.

### 4. Upstairs Dining Room

Like the downstairs bar, the bar upstairs is at all points higher than thirty four inches above the finished floor. All fixed booths in the dining area have a step in front, and what disabled seating is available is not equitably distributed. The emergency exit is not accessible as it consists of a staircase and does not contain informational signage. Plaintiff also alleges

3

generally that the tables in the bar area are not accessible – though no reason is given as to why – and that the hostess stand is too high.

        **5.**      **Upstairs Men's Room**

Like the downstairs men's restroom, the door to the men's room upstairs does not provide the appropriate signage and all doors lack locking mechanisms that can be operated with one hand without tight grasping, pinching, or wrist twisting. Unlike the downstairs men's restroom, the one upstairs fails to contain side grab bars, or accessible toilet and paper towel dispensers. Moreover, the hardware on the doors upstairs is placed too high. Finally, the pathway to the upstairs bathroom area is partially blocked by a wall-mounted cabinet.

        **6.**      **Parking Lot**

Pistol Pete's parking lot fails to provide the minimum required number of disabled parking spaces, and the provided disabled parking spaces are not located on the shortest route of travel to the main facility. There is no accessible pathway from these spaces to the main facility.

        **B.**      **Procedural History**

On November 6, 2008, Plaintiff filed a Complaint against Defendants alleging violations of the ADA and LAD. Specifically, Plaintiffs claim that Defendants have failed to comply with numerous federal regulations mandating the removal of architectural barriers in places of public accommodation that render Pistol Pete's inaccessible to Plaintiff and other disabled persons. Plaintiff does not demand damages; rather, Plaintiff only seeks a declaration that Defendants have violated the ADA and LAD and a mandatory injunction to bring Pistol Pete's into ADA compliance. Defendants were served, by way of authorized agent, at Pistol Pete's on November 19, 2008. Defendants did not file an answer or motion or respond in any way. On April 2, 2009

Plaintiff moved for an entry of default.  On the same day, the Clerk of Court entered default as to Defendants for failure to appear, plead or otherwise defend.  Finally, on April 17, 2009, Plaintiff filed the instant motion for default judgment, which Defendants have not opposed.

## II.     STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action. See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  Although the entry of a default judgment is largely a matter of judicial discretion, the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable."  Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir. 1984) (citations omitted).

For purposes of considering a motion for default judgment, the Court should accept as true all well-pleaded factual allegations in the Complaint, except for allegations relating to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  Further, the Court need not accept a plaintiff's legal conclusions.  See Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed. 1998)).  Therefore, the Court must determine if Plaintiff has stated a legitimate cause of action.  See La. Counseling and Family Servs., Inc. v. Makrygialos, LLC, 543 F. Supp. 2d 359, 364 (D.N.J. 2008).

Further, in considering a motion for default judgment the Court must consider "whether (1) plaintiff will be prejudiced if default is not granted, (2) defendant has a meritorious defense,

5

and (3) defendant's delay was the result of culpable conduct." Carpenters Health and Welfare Fund v. Naglak Design, No. 94-2829, 1995 WL 20848, at *2 (E.D. Pa. Jan. 18, 1995) (citing Emasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987)).

**III.   DISCUSSION**

Title III of the ADA prohibits disability discrimination in places of public accommodation. 42 U.S.C. § 12182(a). The ADA provides a private cause of action for injunctive relief to persons subjected to disability discrimination. 42 U.S.C. § 12188(a)(2). To state a claim, a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor, or operator. Bowers v. Nat. Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 514 (D.N.J. 2000).

Here, Plaintiff has alleged that Defendants own and operate Pistol Pete's and that they have discriminated against him, as a disabled person who relies on a wheelchair for mobility, by maintaining Pistol Pete's in non-compliance with federal regulations governing the removal of architectural barriers from public accommodations. Although the Court recognizes that discrimination under the ADA includes "a failure to remove architectural barriers . . . that are structural in nature, in existing facilities . . . ." 42 U.S.C. § 12182(b)(2)(A)(iv), the Court cannot reach the question of whether Plaintiff is entitled to relief unless and until it is satisfied that Plaintiff has standing to bring the suit in the first instance. Accordingly, the Court turns to an inquiry into Plaintiffs standing to sue for injunctive relief under the ADA.

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Interest Research Group of N.J., Inc. v.

Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997); see Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 102 (1998).  The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); accord FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996).

>   The Third Circuit has articulated three requirements for standing under Article III:
>
> > (1) the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-85 (3d Cir. 1998) (citing Defenders of Wildlife, 504 U.S. at 560-61); accord Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-76 (3d Cir. 2000).  Standing also encompasses a prudential component whereby courts decline to exercise jurisdiction over litigants attempting to assert the rights of another, claiming generalized grievances more appropriately addressed in the representative branches, or where a litigant's complaint falls without the zone of interests protected by the law invoked.  Allen v. Wright, 468 U.S. 737, 751 (1984).

Plaintiffs seeking prospective injunctive relief must show a "'real and immediate threat' of injury in order to satisfy the 'injury in fact' requirement."  Access 4 All, Inc. v. Absecon Hospitality Corp., No. 04-6060, 2006 WL 3109966, at *5 (D.N.J. Oct. 30, 2006) (citing City of

Los Angeles v. Lyons, 461 U.S. 95, 103-04 (1983)).  As the Third Circuit has instructed, "past exposure to illegal conduct does not show a present claim for injunctive relief . . . ."  Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987) (quoting O'Shea v. Littleton, 414 U.S. 488, 495 (1974)).  Likewise, intentions to return to the source of the illegal conduct "'some day' . . . – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the" requisite actual or imminent injury.  Defenders of Wildlife, 504 U.S. at 564.

In ADA cases where disabled plaintiffs bring suit seeking an injunction mandating the removal of architectural barriers, courts generally look to the following four factors to determine whether the plaintiff has alleged a threat of injury that is concrete and particularized: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel.  See Cottrell v. Zagami, LLC, No. 08-3340, 2009 WL 1416044, at *3 n.3 (D.N.J. May 20, 2009) (collecting cases).  An analysis of these factors enables the Court to appreciate the context of a plaintiff's standing allegations and sheds light on the question of whether the plaintiff is likely to return.  See Disabled Patriots of Am. v. City of Trenton, No. 07-3165, 2008 WL 4416459, at *3 (D.N.J. Sept. 24, 2008).

In this case, Plaintiff has not alleged sufficient facts to demonstrate that he suffers from a real and immediate threat of injury.  Of critical importance to this determination is the fact that Plaintiff simply does not allege that he will ever return to Pistol Pete's, let alone provide the Court with any definitive plans to do so.  To be sure, Plaintiff alleges that he "desires" to return once the architectural barriers are removed, but mere desire is insufficient to show a real and

8

immediate threat of a concrete and particularized injury.  See Dempsey v. Harrah's Atlantic City Operating Co., No. 08-5237, 2009 WL 250274, at *4 (D.N.J. Feb. 2, 2009) (citing Disabled Patriots of Am., Inc., 2008 WL 4416459, at *6).  Indeed, as the court instructed Plaintiff in Dempsey v. Harrah's Atlantic City Operating Co., a general allegation of a desire to return "is essentially the equivalent of pleading that [P]laintiff may return "some day."  2009 WL 250274, at *4.  As noted above, allegations of such "some day" intentions simply will not do.  See Defenders of Wildlife, 504 U.S. at 563.

In addition to Plaintiff's failure to allege a definite plan to return, he also fails to allege facts addressing any of the other three factors – proximity, past patronage, and nearby travel – that courts have considered relevant to the standing inquiry.  This failure is more than one of mere form as without this information the Court is unable to evaluate the likelihood that Plaintiff will, in fact, return to Pistol Pete's.  In turn, this inability makes it impossible for the Court to determine whether Plaintiff suffers a real and immediate threat of harm due to Defendants' allegedly ongoing violations of the ADA and LAD.  Accordingly, the Court concludes that Plaintiff has not carried his burden of proving standing.

Plaintiff's inability to properly allege standing renders the instant motion for default judgment premature.  Although Plaintiff may, at some later point, prevail on such a motion, Plaintiff must first engage and overcome the standing hurdle in order for this Court to be satisfied that it is empowered to grant Plaintiff the rather substantial injunctive relief requested.  Indeed, establishing certainty of standing at this point in the litigation is of even greater importance here, where it appears that Defendants are uninterested in engaging in the adversarial process.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's instant motion for default judgment will be denied, and the Court will order Plaintiff to file an Amended Complaint properly alleging facts consistent with this opinion.  The accompanying Order shall issue today.


Dated: 10-26-2009                                                                  /s/ Robert B. Kugler
                                                                                            ROBERT B. KUGLER
                                                                                            United States District Judge