NOT FOR PUBLICATION (Doc. No. 13)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| C. LEE DEMPSEY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 08-5454 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PISTOL PETE'S BEEF N BEER, LLC, d/b/a PISTOL PETE'S SALOON & RESTAURANT, d/b/a PISTOL PETE'S SALOON STEAK HOUSE & RAW BAR d/b/a PISTOL PETE'S STEAKHOUSE & SALOON, et al., | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Plaintiff C. Lee Dempsey for default judgment. Plaintiff's Amended Complaint brings claims against Defendants Pistol Pete's Beef N Beer, LLC and Salvi & Peter Land, LLC (collectively, "Defendants") for violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-1 et seq. For the reasons explained below, the Court will deny Plaintiff's motion for default judgment.

**I.     BACKGROUND**[1]

    **A.     Facts**

Defendants own and operate a restaurant called Pistol Pete's Beef N Beer in Pleasantville, New Jersey ("Pistol Pete's"). Plaintiff Dempsey is a New Jersey resident who uses a wheelchair for mobility. Prior to the filing of the instant action, Dempsey visited Pistol Pete's intending to utilize the facilities. Dempsey was unable to fully and safely access Pistol Pete's facilities, however, due to the alleged existence of numerous structural barriers. Plaintiff desires to visit Pistol Pete's and utilize its facilities in the future, but cannot do so fully and safely until the barriers are removed. The barriers in question can be grouped into seven basic categories according to location: (1) exterior, entrance, and ground floor; (2) ground floor bar area; (3) ground floor men's restroom; (4) upstairs dining room; (5) upstairs men's restroom; and (6) parking lot. A brief description of the alleged structural barriers follows.

    **1.     Exterior, Entrance & Ground Floor**

Plaintiff alleges that the entire facility fails to provide adequate directional and informational signage. Moreover, the exterior patio tables are set at an inaccessible height. There is also no safe ramp leading from the exterior patio area to the interior of the facility. Similarly, there is no accessible pathway leading from the main entrance of Pistol Pete's to the restrooms, due in part to the obstruction caused by a large popcorn machine. Passage from the

---

[1] The facts in this section are drawn exclusively from the allegations contained in Plaintiff's Amended Complaint.

downstairs area to the upstairs area is likewise inaccessible due to the existence of a staircase.

### 2. Ground Floor Bar Area

The bar/serving counter is rendered inaccessible to Plaintiff as the entirety of the counter is set higher than thirty-four inches above the finished floor. The tables are similarly inaccessible due to being supported by large pedestal bases that do not afford adequate underneath clearance. Plaintiff also alleges that the video juke box is inaccessible but does not explain why.

### 3. Ground Floor Men's Restroom

As an initial matter, the outer door to the restroom does not provide signage indicating that the restroom is accessible to those with disabilities. Inside the restroom, the lavatories themselves are inaccessible to Plaintiff because there is less than twenty-nine inches of clearance between the bottom of the apron under the units and the finished floor. Moreover, the hot water and drain pipes underneath the lavatories are not insulated to prevent burns and the units lack a rear grab bar. The urinals are also inadequate because they are not stall-type or wall-hung with an elongated rim, and in any event, are more than seventeen inches above the finished floor. In addition, the locking mechanisms on the restroom doors are not operable with one hand and/or require tight grasping, pinching, or wrist twisting. Plaintiff also alleges that the hand dryer, soap dispenser, and coat hook are inaccessible but does not indicate how this is so.

### 4. Upstairs Dining Room

Like the downstairs bar, the bar upstairs is at all points higher than thirty-four inches above the finished floor. All fixed booths in the dining area have a step in front, and what disabled seating is available is not equitably distributed. The emergency exit is not accessible as it consists of a staircase and does not contain informational signage. Plaintiff also alleges

generally that the tables in the bar area are not accessible – though no reason is given as to why – and that the hostess stand is too high.

### 5. Upstairs Men's Restroom

Like the downstairs men's restroom, the door to the men's restroom upstairs does not provide the appropriate signage, and all doors lack locking mechanisms that can be operated with one hand without tight grasping, pinching, or wrist twisting. Unlike the downstairs men's restroom, the one upstairs fails to contain side grab bars, or accessible toilet and paper towel dispensers. Moreover, the hardware on the doors upstairs is placed too high. Finally, the pathway to the upstairs bathroom area is partially blocked by a wall-mounted cabinet.

### 6. Parking Lot

Pistol Pete's parking lot fails to provide the minimum required number of disabled parking spaces, and the provided disabled parking spaces are not located on the shortest route of travel to the main facility. There is no accessible pathway from these spaces to the main facility.

## B. Procedural History

On November 6, 2008, Plaintiff filed a Complaint against Defendants alleging violations of the ADA and LAD. Specifically, Plaintiff claims that Defendants have failed to comply with numerous federal regulations mandating the removal of architectural barriers in places of public accommodation that render Pistol Pete's inaccessible to Plaintiff and other disabled persons. Plaintiff does not demand damages; rather, Plaintiff requests that the Court issue a declaration that Defendants have violated the ADA and LAD and that the Court issue a mandatory injunction to bring Pistol Pete's into ADA compliance. Defendants were served, by way of authorized agent, at Pistol Pete's on November 19, 2008. Defendants did not file an answer or motion or

respond in any way.  On April 2, 2009, Plaintiff moved for an entry of default.  On the same day, the Clerk of Court entered default as to Defendants for failure to appear, plead, or otherwise defend.  On April 17, 2009, Plaintiff filed a motion for default judgment, which Defendants did not oppose.  On October 26, 2009, this Court denied Plaintiff's motion for default judgment with orders to amend the Complaint and properly allege standing.  On October 29, 2009, Plaintiff filed an Amended Complaint.  On February 11, 2010, Plaintiff filed a second motion for default judgment.  The Defendants have not responded to Plaintiff's Amended Complaint or Plaintiff's second motion for default judgment.

**II.    DISCUSSION**

The Court will first address Plaintiff's standing in this matter, as that is a threshold jurisdictional inquiry.  The Court will then address Plaintiff's motion for default judgment.

**A.    Standing**

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution."  Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir.1997); see Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 102 (1998).  The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); accord FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir.1996).

The Third Circuit has articulated three requirements for standing under Article III:

(1) the plaintiff must have suffered an injury in fact - an invasion of a legally protected

> interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-85 (3d Cir.1998) (citing Defenders of Wildlife, 504 U.S. at 560-61); accord Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-76 (3d Cir. 2000). Standing also encompasses a prudential component whereby courts decline to exercise jurisdiction over litigants attempting to assert the rights of another, claiming generalized grievances more appropriately addressed in the representative branches, or where a litigant's complaint falls without the zone of interests protected by the law invoked. Allen v. Wright, 468 U.S. 737, 751 (1984).

Plaintiffs seeking prospective injunctive relief must show a "'real and immediate threat' of injury in order to satisfy the 'injury in fact' requirement." Access 4 All, Inc. v. Absecon Hospitality Corp., No.04-6060, 2006 WL 3109966, at *5 (D.N.J. Oct. 30, 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103-04 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.")). As the Third Circuit has instructed, "past exposure to illegal conduct does not show a present claim for injunctive relief . . . ." Brown v. Fauver, 819 F.2d 395, 400 (3d Cir.1987) (quoting O'Shea v. Littleton, 414 U.S. 488, 495 (1974)). Likewise, intentions to return to the source of the illegal conduct " 'some day' . . . - without any description of concrete plans, or indeed even any specification of when the some day will be - do not support a finding of the" requisite actual or imminent injury.

Defenders of Wildlife, 504 U.S. at 564.

In ADA cases where disabled plaintiffs bring suit seeking an injunction mandating the removal of architectural barriers, courts generally look to the following four factors to determine whether the plaintiff has alleged a threat of injury that is concrete and particularized: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel. See Cottrell v. Zagami, LLC, No. 08-3340, 2009 WL 1416044, at *3 n.3 (D.N.J. May 20, 2009) (collecting cases). An analysis of these factors enables the Court to appreciate the context of a plaintiff's standing allegations and sheds light on the question of whether the plaintiff is likely to return. See Disabled Patriots of Am. v. City of Trenton, No. 07-3165, 2008 WL 4416459, at *3 (D.N.J. Sept. 24, 2008).

Here, Plaintiff's Amended Complaint satisfies the standing requirements set out above. Plaintiff's Amended Complaint alleges an injury in fact. Plaintiff visited Defendants' property and was denied proper and full access due to architectural barriers that are arguably in violation of the ADA. Plaintiff alleges that he desires and plans to visit Defendants' property in the future. Plaintiff lives an hour and a half from the subject property and frequently passes the subject property on his drives to Atlantic City. Plaintiff alleges that, due to his recent retirement, he and his wife intend to travel to the subject property several times in the near future and will continue to do so indefinitely.

The Amended Complaint also alleges causation and redressability. Plaintiff alleges he was denied full and safe access to Defendants' property when he attempted to visit the subject property due to Defendants' alleged violations of the ADA. Plaintiff is seeking injunctive relief

7

requiring Defendants to remove the architectural barriers that are in violation of the ADA. An injunction from the Court would redress Plaintiff's injury, as it would require Defendants to comply with the ADA. Accordingly, the Plaintiff has properly alleged standing.

### B. Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), courts may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action. See Anchorage Assocs. v. Virgin Is. Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). While the entry of a default judgment is largely a matter of judicial discretion, the Third Circuit Court of Appeals has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir. 1984) (citations omitted).

Before granting default judgment, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." Signs by Tomorrow-USA, Inc. v. G.W. Engel Co., No. 05-4353, 2006 WL 2224416, at *2 (D.N.J. Aug. 1, 2006) (citing DirecTV, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed. 1998). Courts are required to make an independent determination concerning damages, unless the amount of damages is certain. Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 69 (D.D.C. 2002); Jimenez v. Rosenbaum-Cunningham, Inc., No. 07-1066, 2010 WL 1303449, at *2-3 (March 31, 2010). The Court should accept as true all well-pleaded factual allegations in the complaint by virtue of the defendant's default, except for allegations relating to the amount of

8

damages.  Comdyne, 908 F.2d at 1149; Asher, 2006 WL 680533, at *1; 10A Wright, Miller & Kane, supra, § 2688.  However, the Court need not accept a plaintiff's legal conclusions. Cotapaxi Custom Design & Mfg., LLC v. Pacific Design, No. 07-4378, 2010 WL 2330086, at *3 (D.N.J. June 8, 2010) (citing Signs by Tomorrow-USA, Inc., 2006 WL 2224416, at *2); 10A Wright, Miller & Kane, supra, § 2688.  In addition, the Court must consider the following three factors when exercising its discretion in granting default judgment: "Whether (1) plaintiff will be prejudiced if default is not granted, (2) defendant has a meritorious defense, and (3) defendant's delay was the result of culpable misconduct."  Emasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); Hritz, 732 F.2d at 1181.

  The Amended Complaint does not contain sufficient well-pleaded allegations to establish liability.  The Amended Complaint contains six pages containing thirty-nine separate alleged violations of ADA regulations.  Many, if not most, of these allegations fail to contain assertions of fact sufficient to demonstrate liability.  Moreover, many of the allegations fail to specifically indicate which specific ADA regulation has been violated.

  For example, the first alleged violation is that the "exterior patio tables located in the Subject Facility are at inaccessible height in violation of 28 C.F.R. Part 36, Section 4.32.4." (Pl.'s Compl. at 4, subsection i.)  Section 4.32.4 of the Code of Federal Regulations ("the Code") states that accessible tables should be twenty-eight inches to thirty-four inches above the ground. 28 C.F.R. Part 36 § 4.32.4 (2008).  The Amended Complaint does not contain any factual averments as to how high the patio tables actually are.

  The second alleged violation is that Defendants failed "to provide safe ADA compliant ramp leading from patio area to interior of the Subject Facility."  (Pl.'s Compl. at 4, subsection

ii.) Although the Amended Complaint fails to mention any section in Part 36 of the Code that dictates the requirements of a compliant ramp, Plaintiff may have been referring to Section 4.8, which dictates the appropriate slope, rise, width, landings, handrails, cross slope, surfaces, edge protection, and outdoor conditions required for ADA compliant ramps.  The Amended Complaint does not aver any facts relating to the ramp's slope, rise, width, landings, handrails, cross slope, surfaces, edge protection, or outdoor conditions to indicate to this Court what deficiencies the ramp possesses.

The third alleged violation is a "failure to provide adequate directional and informational signage throughout the Subject Facility." (Pl.'s Compl. at 4, subsection iii.)  Plaintiff's Amended Complaint refers the Court to 28 C.F.R. Part 36, Section 4.1.3(16).  However, this section merely directs the reader to Section 4.30 of the Code, which designates the specific requirements for different types of signage.  28 C.F.R. Part 36 § 4.30.  The Amended Complaint does not contain any factual assertions as to how the signage at the Subject Facility is in violation of the ADA.

The fourth alleged violation is a "failure to provide signage addressing people with disabilities telling them that accessible services are provided." (Pl.'s Compl. at 4, subsection iv.)  The allegation refers the Court to Section 4.30.4, which designates how high letters on signs should be raised and whether they are to be accompanied by Braille.  28 C.F.R. Part 36 § 4.30.4.  However, the Amended Complaint fails to assert any facts concerning the actual signage at Defendants' property and how the signage provided is in violation of the Code.

The sixth alleged violation is a "failure to provide access to the upstairs dining area due to multiple steps leading to said dining area, and no elevator." (Pl.'s Compl. at 5, subsection vi.)  Although the Amended Complaint points the Court to Part 36 of the Code, Section 4.1.3,

10

Exception 1 provides that "[e]levators are not required in facilities that are less than three stories or that have less than 3000 square feet per story unless the building is a shopping center, a shopping mall, or the professional office of a health care provider." 28 C.F.R. Part 36 § 4.1.3. The Amended Complaint offers the Court no facts concerning the number of stories or square footage at the Subject Facility.

The seventh alleged violation is a "failure to provide ADA compliant information signage at the emergency exit located near the ground floor bar area of the Subject Facility." (Pl.'s Compl. at 5, subsection vii.) Plaintiff points the Court to Part 36 of the Code. Section 4.30 of the Code refers to signage, but does not mention required signage for the purpose of emergency exits. 28 C.F.R. Part 36 § 4.30. Plaintiff's Amended Complaint does not provide the Court with facts about the actual signage provided at the emergency exit near the ground floor bar of the Subject Facility.

The ninth alleged violation is that "[t]he tables located in the Subject Facility, [sic] are inaccessible due to the large pedestal base, which does not provide sufficient underneath clearance." (Pl.'s Compl. at 5, subsection ix.) The Amended Complaint refers generally to Part 36 of the Code. However, Sections 4.32.2 and 4.32.3 are relevant to this claim. Section 4.32.2 requires that clear floor space not overlap knee space by more than nineteen inches, and Section 4.32.3 requires that knee space is at least twenty-seven inches high, thirty inches wide, and nineteen inches deep for persons seated in wheelchairs. 28 C.F.R. Part 36 §§ 4.32.2, 4.32.3. The Amended Complaint fails to refer the Court to these Sections and does not contain any factual averments as to how much clearance is provided by the tables at the Subject Facility.

The tenth alleged violation is that "[t]he Video Juke Box located in the Subject Facility is

inaccessible." (Pl.'s Compl. at 5, subsection x.) Plaintiff's Amended Complaint refers the Court to Part 36 generally. No specific sections of the Code are offered to the Court, and no facts are asserted to inform the Court of how the video juke box is inaccessible to persons with disabilities.

The thirteenth alleged violation is "a failure to provide accessible hand dryer." (Pl.'s Compl. at 6, subsection xiii.) The Amended Complaint refers the Court to Part 36 generally and does not offer any section by which an accessible hand dryer would be required. No facts are asserted as to the hand dryers that are provided by the Subject Facility.

The fourteenth alleged violation is a "failure to provide appropriate signage on the outer door indicating that the restroom is handicap accessible as required by 28 C.F.R. Part 36, Section 4.30." (Pl.'s Compl. at 6, subsection xiv.) Section 4.30.1 refers the reader to Section 4.1. 28 C.F.R. Part 36 § 4.30.1. In Section 4.1.2(7)(d), accessible toilet and bathing facilities should have appropriate signage "when not all are accessible." 28 C.F.R. Part 36 § 4.1.2(7)(d) (emphasis added). Plaintiff's Amended Complaint does not contain facts to indicate how many restrooms the Subject Facility has and whether or not all of the restrooms are accessible to persons with disabilities.

The sixteenth alleged violation is a "failure to provide an accessible soap dispenser." (Pl.'s Compl. at 6, subsection xvi.) The Amended Complaint refers to Section 4.22.7 of the Code, which provides: "If controls, dispensers, receptacles, or other equipment are provided, then at least one of each shall be on an accessible route." 28 C.F.R. Part 36 § 4.22.7. The Amended Complaint does not contain any factual averments as to how the Subject Facility's restrooms are inaccessible.

The nineteenth alleged violation is a "failure to provide an accessible coat hook." (Pl.'s Compl. at 7, subsection xix.) Plaintiff refers the Court to Part 36 of the Code but fails to identify a particular section to illustrate a violation. The Amended Complaint does not aver any facts as to what type of coat hooks the Subject Facility provides.

The twenty-fourth alleged violation is a "failure to provide accessible tables in the Bar Area of the Subject Facility." (Pl.'s Compl. at 7, subsection xxiv.) The Court is referred to Part 36 of the Code. However, no specific section in the Code is offered. No actual facts are provided as to the height or depth of the tables at the Subject Facility.

The twenty-fifth alleged violation is a "failure to provide hostess stand in Subject Facility at an accessible height." (Pl.'s Compl. at 8, subsection xxv.) Plaintiff points the Court to Part 36 of the Code, but does not provide the Court with a specific section of the Code. The Amended Complaint does not aver any facts as to the actual height of the hostess stand used at the Subject Facility.

The twenty-sixth alleged violation is a "failure to provide safe, accessible emergency exit, which emergency exit is near second floor restroom, due to numerous steps and no elevator located in Subject Facility." (Pl.'s Compl. at 8, subsection xxvi.) The Court is referred to Part 36, but no particular section is cited to indicate a specific regulation requiring Defendants to provide a safe and accessible emergency exit. The Amended Complaint fails to include the necessary facts to indicate the emergency exit at the Subject Facility is inadequate.

The twenty-seventh alleged violation is a "failure to provide the required ADA compliant informational signage at the aforementioned emergency exit." (Pl.'s Compl. at 8, subsection xxvii.) Plaintiffs refer to Part 36 of the Code, but fail to offer the Court a specific section that

13

applies to this claim.  No specific facts concerning the actual signage at the Subject Facility are contained in the Amended Complaint.

The twenty-eighth alleged violation is a "failure to provide appropriate signage on the outer door indicating that the restroom is handicap accessible." (Pl.'s Compl. at 8, subsection xxviii.)  Section 4.1(d) provides, however, that signs indicating accessibility are only required when not all restrooms are accessible.  28 C.F.R. Part 36 § 4.1(d).  Plaintiffs fail to provide the Court with the relevant facts as to whether all restrooms in the Subject Facility are handicap accessible.

The thirty-first alleged violation is a "failure to provide paper towel dispenser at the required accessible height." (Pl.'s Compl. at 8, subsection xxxi.)  The Amended Complaint only refers the Court to Part 36, but Section 4.22.7 provides that if dispensers are provided by a facility, then at least one of the dispensers should be accessible.  28 C.F.R. Part 36 § 4.22.7.  Plaintiff's Amended Complaint does not contain any facts as to whether the Subject Facility provides paper towel dispensers in the restrooms of their facility.

The thirty-second alleged violation is a "failure to provide accessible soap dispenser." (Pl.'s Compl. at 8, subsection xxxii.)  When dispensers are provided by a facility, at least one of the dispensers should be on an accessible route.  28 C.F.R. Part 36 § 4.22.7.  However, Plaintiff's Amended Complaint fails to include necessary facts as to whether soap dispensers are provided by the Subject Facility.

The thirty-fourth alleged violation is a "failure to provide restroom door hardware at an accessible height." (Pl.'s Compl. at 9, subsection xxxiv.)  The Amended Complaint refers the Court generally to Part 36 of the Code but fails to include any specific regulation concerning this

allegation.  Furthermore, the Amended Complaint does not include any factual assertions as to the actual restroom door hardware and its inadequacies.

Finally, the thirty-seventh alleged violation is a "failure to provide accessible hand dryer." (Pl.'s Compl. at 9, subsection xxxvii.)  Plaintiff refers the Court to Part 36 generally of the Code, but does not include a relevant regulation to require Defendants to provide a hand dryer in any of their restrooms.  The Amended Complaint does not contain any factual averments as to whether hand dryers are provided by the Subject Facility or not.

In sum, the Amended Complaint does not contain enough factual allegations to establish liability in this case.  The Court will not accept in lieu of well-pleaded factual allegations Plaintiff's legal conclusions as to the alleged violations of the ADA at Defendants' facility.  Accordingly, Plaintiff's motion for default judgment will be denied without prejudice.[2]  Because the Court will deny Plaintiff's motion on the grounds that Plaintiff has not pleaded sufficient facts to demonstrate liability and has provided no affidavits or other documentary evidence showing entitlement to certain relief, the Court need not reach an analysis of the Emasco factors.

---

[2]Moreover, Plaintiff's Amended Complaint is unverified, and Plaintiff provides the Court with no affidavits or other documentary evidence to support its entitlement to relief.  Courts have denied motions for default judgment on this basis.  See, e.g., Shaughnessy v. TLLC, LLC, No. 09-00004, 2009 WL 1054944, at *3 (D. Haw. Apr. 17, 2009); Access for the Disabled, Inc. v. 192 Flea Market Outlet, Inc., No. 6:07-954, 2008 WL 1931315, at *2 (M.D. Fla. May 2, 2008).

### III. CONCLUSION

For the foregoing reasons, Plaintiff's second motion for default judgment is denied without prejudice. An appropriate order will follow.


Date: 6-29-2010 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge